UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,    :
             :
    Plaintiff,     :
             :
vs.           : Case No. 4:20-cv-00386
             :
CREVE COEUR PLAZA ASSOCIATES, LLC, :
a Missouri limited liability company;  :
             :
TUESDAY MORNING, INC., a Texas  :
corporation;       :
             :
and          :
             :
ALEJANDRO INVESTORS, LLC, a Missouri :
limited liability company;    :
             :
    Defendants.   :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, CREVE COEUR PLAZA ASSOCIATES, LLC, a Missouri limited liability company; TUESDAY MORNING, INC., a Texas corporation; and ALEJANDRO INVESTORS, LLC, a Missouri limited liability company (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.  Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant Creve Coeur Plaza Associates, LLC's property, Creve Coeur Plaza, has an address of 700 N. New Ballas Road, Creve Coeur, Missouri 63141 and is located in the County of St. Louis ("Creve Coeur Plaza").

3.      Defendant Tuesday Moring, Inc.'s store, Tuesday Morning, has an address of 780 N. New Ballas Road, Creve Coeur, Missouri 63141 and is located in Creve Coeur Plaza ("Tuesday Morning").

4.      Alejandro Investors, LLC's restaurant, The Pasta House Co., has an address of 700 N. New Ballas Road, Creve Coeur, Missouri 63141 and is located in Creve Coeur Plaza ("The Pasta House Co.").

5.      Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendants' property and stores are located in and do business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.      Defendants each own, lease, lease to, or operate a place of public accommodation, as defined by the ADA, 42 U.S.C. § 12181(7)(B) and (E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.      Creve Coeur Plaza is a shopping center.

9.      Creve Coeur Plaza is a place of public accommodation.

10.     Qdoba is a restaurant.

11.     Qdoba is a place of public accommodation.

12.     Tuesday Morning, in Creve Coeur Plaza is a sales establishment.

2

13.     Tuesday Morning in Creve Coeur Plaza is a place of public accommodation.

14.     The Pasta House Co. is a restaurant.

15.     The Pasta House Co. is a place of public accommodation.

16.     The Fantasy Shop—Comics and Games in Creve Coeur Plaza is a place of public accommodation.

17.     Defendants are responsible for complying with the obligations of the ADA.

18.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

19.     Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

20.     Plaintiff Fred Nekouee has visited the St. Louis area near Creve Coeur Plaza in June 2015, June 2016, September 2017, December 2017, March 2018, July 2018, September 2018, January 2019, May 2019, and September 2019.

21.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Creve Coeur Plaza which forms the basis of this lawsuit on September 23, 2018; January 27, 2019; and on September 16, 2019.

22.     Plaintiff visited Qdoba and bought a beef brisket salad at Qdoba on January 27, 2019.

23.     Plaintiff likes the fresh-grilled fast food at Qdoba and he plans to dine there again if the barriers to access are removed.

24.     Plaintiff bought goods at Tuesday Morning in Creve Coeur Plaza on September

23, 2018 and again on September 16, 2019.

25.     Plaintiff like the prices at Tuesday Morning and plans to shop there again if the barriers to access are removed.

26.     Plaintiff visited and bought pizza at The Pasta House Co. on September 23, 2018 and again on September 16, 2019.

27.     Plaintiff likes the pizza at The Pasta House Co. and plans to eat there again if the barriers to access are removed.

28.     Plaintiff bought goods at the Fantasy Shop—Comics and Games in the Creve Coeur Plaza on September 23, 2018.

29.     The Plaintiff plans to shop at the Fantasy shop—Comics and Games if the barriers to access there are removed.

30.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at Creve Coeur Plaza, Qdoba, Tuesday Morning, and The Pasta House Co. since they are on the way to the heavy equipment dealerships he visits in the St. Louis area and are close to the airport.

31.     Fred Nekouee has definite plans to return to the St. Louis area in March 2020.

32.     For the reasons set forth in paragraphs 18 through 28 and 45 of this Complaint, Mr. Nekouee plans to return to Creve Coeur Plaza.

33.     While moving in his wheelchair to window shop at Creve Coeur Plaza, the Plaintiff encountered barriers to access.

34.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the

disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms in Qdoba, the Fantasy Shop—Comics and Games, Tuesday Morning, and The Pasta House Co. in Creve Coeur Plaza.

35.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

36.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

37.     The running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of The Pasta House Co. are steeper than 1:48.

38.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

39.     The cross slope of the walking surface along the accessible route to the entrance of The Pasta House Co. is steeper than 1:48.

40.     The Plaintiff encountered barriers to access in the men's restroom in Tuesday Morning, so he tried using the women's restroom in Tuesday Morning, in which women's restroom he also encountered barriers to access.

41.     The Plaintiff encountered barriers to access in the men's restroom in The Pasta House Co., so he tried using the women's restroom in The Pasta House Co., in which women's restroom he also encountered barriers to access.

42.     The Plaintiff encountered barriers to access in Qdoba at the Creve Coeur Plaza on his visit on January 27, 2019, and Plaintiff requires the inspection of the Qdoba in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to

access.

43.     The Plaintiff is deterred from visiting the Creve Coeur Plaza, even though the Creve Coeur Plaza is on the way to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the parking lot, access aisles, walking surfaces (sidewalks), and restrooms until the property is made accessible to him in a wheelchair.

44.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 50 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

45.     Fred Nekouee desires to visit the Creve Coeur Plaza not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

46.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

47.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

48.     Preliminary inspections of the Creve Coeur Plaza have shown that violations exist.

49.     Physical conditions that exist at the Property are accurately described in each

subsection designated with a romanette "(i)" in each lettered subparagraph of paragraph 50 below.

50.     The violations that Fred Nekouee personally encountered and observed on his visit to the Creve Coeur Plaza include, but are not limited to:

**PARKING AREA**

a.   (i) In the parking lot, one of the two parking spaces for disabled patrons in front of Tuesday Morning does not have an upright sign with the International Symbol of Accessibility. (ii) One of the two parking spaces for disabled patrons in front of Tuesday Morning does not have an upright sign with the International Symbol of Accessibility, in violation of Federal Law 2010; ADAAG §§ 502.6 and 703.7.2.1.   (iii) This lack of signage made it difficult for the Plaintiff to find an accessible parking space and to park near the accessible route to Tuesday Morning.   (iv) The action required to install an upright sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the two parking spaces for disabled patrons in front of T-Mobile and Shred415 do not have upright signs with the International Symbol of Accessibility.   (ii) The two parking spaces for disabled patrons in front of T-Mobile and Shred415 do not have upright signs with the International Symbol of Accessibility, in violation of Federal Law 2010; ADAAG §§ 502.6 and 703.7.2.1.   (iii) This lack of signage made it difficult for the Plaintiff to find an accessible parking space.   (iv) The action required to install upright signs with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, the parking space for disabled patrons in front of The Pasta House Co. and Club Pilates has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) The parking space in front of The Pasta House Co. and Club Pilates has a running slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The Plaintiff encountered this running slope, and it made it difficult for him to keep his wheelchair stable while getting in and out of the vehicle in this parking space.   (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the accessible parking space with van accessible signage in front of The Pasta House Co. and Club Pilates has a running slope and a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) The accessible parking space with van accessible signage in front of The Pasta House Co. and Club Pilates has a running slope and a cross slope that are steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The Plaintiff encountered these steep slopes in this parking space and he required assistance to stabilize his wheelchair as he got in and out of his vehicle.   (iv) The action required to reduce these slopes of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) In the parking lot, the accessible parking spaces in front of the Fantasy Shop--Comics and Games and First Watch have cross slopes steeper than 1:48 and steeper than 3.1%.   (ii) The accessible parking spaces in front of the Fantasy Shop--Comics and Games and First Watch have cross slopes that are steeper than 1:48 and steeper than 3.1%, and as steep as about 5%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The Plaintiff encountered these steep slopes in these parking spaces and he required assistance to stabilize his wheelchair as he got in

and out of his vehicle.   (iv) The action required to reduce these slopes of these parking spaces is easily accomplishable and able to be carried out without much difficulty or expense.

f.    (i) In the parking lot, the running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of The Pasta House Co. and Club Pilates are steeper than 1:48 and steeper than 3.1%.   (ii) The running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of The Pasta House Co. and Club Pilates are steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) While moving in his wheelchair, the Plaintiff encountered the slopes in this access aisle and they made his wheelchair unstable.   (iv) The action required to reduce these slopes of these parking spaces is easily accomplishable and able to be carried out without much difficulty or expense.

g.    (i) In the parking lot, the running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of the Fantasy Shop--Comic Games and First Watch are steeper than 1:48 and steeper than 3.1%.   (ii) The running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of the Fantasy Shop--Comic Games and First Watch are steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered the slopes in this access aisle and they made his wheelchair unstable.   (iv) The action required to reduce these slopes of these parking spaces is easily accomplishable and able to be carried out without much difficulty or expense.

h.    (i) In the parking lot, the cross slope of the walking surface along the accessible route from the accessible parking spaces in front of The Pasta House Co. to the entrance of The Pasta House Co. is steeper than 1:48 and steeper than 3.1%.   (ii) In the parking lot, the running slope

9

and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of the Pasta House and Club Pilates are steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 403.3.    (iii)   (ii) The running slope and the cross slope of the access aisle serving the parking spaces for disabled patrons in front of the Pasta House and Club Pilates are steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered the cross slope of this walking surface, and it made his wheelchair unstable and caused it to slip sideways.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN TUESDAY MORNING**

i.   (i) The force needed to open the entrance door to the men's restroom in Tuesday Morning is greater than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Tuesday Morning is about 7 pounds, pertaining to the continuous application of force necessary to fully open a door, which continuous application of force exceeds the maximum allowed force of 5 pounds (22.2 N), in violation of Federal Law 2010; ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty entering this restroom.   (iv) The action required to adjust or replace this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The men's restroom in Tuesday Morning does not have signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, the men's restroom in Tuesday Morning does not have signage with the International Symbol of Accessibility, in violation of the Federal Law 2010; ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and such lack of signage is a barrier to

access in that it appeared to the Plaintiff that Tuesday Morning does not have an accessible

restroom.   This lack of signage deters the Plaintiff from shopping at Tuesday Morning.   (iv)

The action required to install a sign with the International Symbol of Accessibility is easily

accomplishable and able to be carried out without much difficulty or expense.



k.   (i) In the Tuesday Morning men's restroom, the entrance door push side maneuvering

clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch

and closer is less than the minimum allowed clearance of 12 inches.   (ii) In the Tuesday

Morning men's restroom, the entrance door push side maneuvering clearance in a front approach

beyond the latch and parallel to the doorway for a door with a latch and closer is less than the

minimum allowed clearance of 12 inches and is only about 4 inches, in violation of Federal Law

2010; ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance, the Plaintiff required

assistance to enter the restroom in his wheelchair.   (iv) The action required to remove the

shelving outside of this door is easily accomplishable and able to be carried out without much difficulty or expense.

l.      (i) In the men's restroom in Tuesday Morning, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall and only extends about 46 inches from the rear wall, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to the lack of an extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the men's restroom in Tuesday Morning, the space between the top of the rear wall grab bar and the bottom of the paper towel dispenser above it, is less than 12 inches.   (ii) The space between the top of the rear wall grab bar and the bottom of the paper towel dispenser above it, is less than 12 inches and is only about 6 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to the location of the paper towel dispenser above the rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to position himself to sit on the toilet. (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

n.      (i) In the men's restroom in Tuesday Morning, the lever to the paper towel dispenser is higher than 48 inches above the floor.   (ii) This lever to the paper towel dispenser is higher than 48 inches above the finish floor and is as high as about 53.5 inches above the finish floor, in violation of Federal Law 2010; AGAAG § 308.2.1.   (iii) Due to the height of this lever above the floor, the Plaintiff could not reach this lever from his wheelchair.   (iv) The action required to

relocate this paper towel dispenser is easily accomplishable and ble to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN TUESDAY MORNING**

o.     (i) The women's restroom in Tuesday Morning does not have signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, the women's restroom in Tuesday Morning does not have signage with the International Symbol of Accessibility, in violation of the Federal Law 2010; ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and such lack of signage is a barrier to access in that it appeared to the Plaintiff that Tuesday Morning does not have an accessible restroom.   This lack of signage deters the Plaintiff from shopping at Tuesday Morning.   (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



p.    (i) In the women's restroom in Tuesday Morning, the side wall grab bar does not

extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a

minimum of 54 inches from the rear wall and only extends about 46 inches from the rear wall, in

violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to the lack of an extension from

the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his

wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab

bar is easily accomplishable and able to be carried out without much difficulty or expense.

**FANTASY SHOP—COMICS AND GAMES MEN'S RESTROOM**

q.    (i) The men's restroom in the Fantasy Shop—Comics and Games does not have

signage with the International Symbol of Accessibility.   (ii) The men's restroom in the Fantasy

Shop—Comics and Games does not have signage with the International Symbol of Accessibility,

in violation of the Federal Law 2010; ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and such lack of signage is a barrier to access in that it appeared to the Plaintiff that the Fantasy Shop—Comics and Games does not have an accessible restroom.   This lack of signage deters the Plaintiff from shopping at the Fantasy Shop—Comics and Games.   (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i)   The rear wall grab bar in the men's restroom in the Fantasy Shop—Comics and Games does not extend at least 12 inches from the centerline of the water closet on one side and 24 inches on the other side.   (ii) The rear wall grab bar in the men's restroom in the Fantasy Shop—Comics and Games does not extend a minimum of 12 inches from the centerline of the water closet on one side and 24 inches on the other side, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to the placement of this rear wall grab bar, the Plaintiff had difficulty using it to position himself to use the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the men's restroom in the Fantasy Shop—Comics and Games, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall and only extends about 46 inches from the rear wall, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to the lack of an extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this

side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

t.     (i) The floor of the men's restroom in the Fantasy Shop—Comics and Games has a change in level greater than 0.5 inches.   (ii) The floor of the men's restroom in the Fantasy Shop—Comics and Games has a change in level at the floor drain of greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG § 303.3.   (iii) The Plaintiff encountered this change of level at the floor drain, and he had to take measures to avoid it catching the wheel of his wheelchair.   (iv) The action required to reduce this change of level at the floor drain is easily accomplishable and able to be carried out without much difficulty or expense.

u.     (i) In the men's restroom in the Fantasy Shop—Comics and Games, the space between the top of the rear wall grab bar and the bottom of the shelf above it, is less than 12 inches.   (ii) The space between the top of the rear wall grab bar and the bottom of the shelf above it, is less than 12 inches and is only about 6 inches, in violation of Federal Law 2010; ADAAG § 609.3. (iii) Due to the location of the shelf above the rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to position himself to sit on the toilet.   (iv) The action required to relocate this shelf is easily accomplishable and able to be carried out without much difficulty or expense.

v.     (i) In the men's restroom in the Fantasy Shop—Comics and Games, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.   (ii) In the men's restroom in the Fantasy Shop—Comics and Games, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches and is about 20 inches, in violation of Federal Law 2010; ADAAG § 604.2.   (iii) Due to the location of the toilet, the Plaintiff had difficulty using the side wall grab bar and he could not reach the toilet paper from a normal sitting position

on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

w.    (i)   In the men's restroom in the Fantasy Shop—Comics and Games, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) In the men's restroom in the Fantasy Shop—Comics and Games, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the finish floor and is as high as about 45 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.3.   (iii) Due to the height of the bottom of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

### THE PASTA HOUSE CO. ENTRANCE DOOR

x.    (i) The force needed to open the entrance door to The Pasta House Co. is greater than 5 pounds.   (ii) The force needed to open the entrance door to The Pasta House Co. is about 11 pounds, pertaining to the continuous application necessary to fully open a door, which force exceeds the maximum allowed force of 5 pounds (22.2 N), in violation of Federal Law 2010; ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance to enter The Pasta House Co.   (iv) The action required to adjust or replace this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) The force needed to open the foyer door to The Pasta House Co. is greater than 5 pounds.   (ii) The force needed to open the foyer door to The Pasta House Co. is about 10 pounds, pertaining to the continuous application necessary to fully open a door, which force exceeds the maximum allowed force of 5 pounds (22.2 N), in violation of Federal Law 2010; ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required

additional assistance to enter The Pasta House Co.   (iv) The action required to adjust or replace this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE PASTA HOUSE CO.**

z.   (i) The force needed to open the door to the men's restroom in The Pasta House Co. is greater than 5 pounds.   (ii) The force needed to open the door to men's restroom in The Pasta House Co. is about 10 pounds, pertaining to the continuous application necessary to fully open a door, which force exceeds the maximum allowed force of 5 pounds (22.2 N), in violation of Federal Law 2010; ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required additional assistance to enter the men's restroom in The Pasta House Co.   (iv) The action required to adjust or replace this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) The time for the men's restroom door in The Pasta House Co. to close from an open position of 90 degrees to 12 degrees from the latch is less than five seconds.   (ii) The time for the men's restroom door in The Pasta House Co. to close from an open position of 90 degrees to 12 degrees from the latch is about three seconds, which time is less than the minimum required time of five seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short time this door takes to close, this door closed on the Plaintiff's wheelchair before he could make it through the door.   (iv) The action required to adjust the closer for this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) The men's restroom in The Pasta House Co. does not have signage with the International Symbol of Accessibility.   (ii) The men's restroom in The Pasta House Co. does not have signage with the International Symbol of Accessibility, in violation of the Federal Law

2010; ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and such lack of signage is a barrier to access in that it appeared to the Plaintiff that The Pasta House Co. does not have an accessible restroom.   This lack of signage deters the Plaintiff from eating at The Pasta House Co.   (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the men's restroom in The Pasta House Co., the accessible toilet compartment door does not have a door pull on both sides of the door near the latch.   (ii) In the men's restroom in The Pasta House Co., the accessible toilet compartment door does not have a door pull on both sides of the door near the latch, in violation of Federal Law 2010; ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the inside of this compartment door, the Plaintiff could not fully close this door when he used the toilet.   (iv) The action required to install a door pull on both sides of this door is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in The Pasta House Co., the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar is less than 36 inches long and is only about 24 inches long, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to this short rear wall grab bar, the Plaintiff had difficulty using this rear wall grab bar to position himself to sit on the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the men's restroom in The Pasta House Co., the side wall grab bar is less than 42 inches long.   (ii) This side wall grab bar is less than 42 inches long and is only about 37 inches long, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to the short length of this

side wall grab bar, the Plaintiff had difficulty using this side wall grab bar to position himself to use the toilet.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

ff.      (i) In the men's restroom in The Pasta House Co., the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall and only extends about 42 inches from the rear wall, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to the lack of an extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

gg.      (i) The centerline of the toilet paper dispenser in the men's restroom in The Pasta House Co. is not located between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser in the men's restroom in The Pasta House Co. is not located between 7 and 9 inches from the front of the toilet, and is behind the toilet as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff tried but could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



hh.      (i) In the men's restroom in The Pasta House Co., the light switch is higher than 48

inches above the floor.   (ii) This light switch is higher than 48 inches above the finish floor and

is about 54 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 308.2.1.

(iii) Due to the height of this light switch above the floor, the Plaintiff tried but could not reach it

from his wheelchair.   (iv) The action required to relocate this light switch is easily

accomplishable and able to be carried out without much difficulty or expense.

ii.      (i) The coat hook in the men's restroom in The Pasta House Co. is higher than 48

inches above the floor.   (ii) This coat hook is installed at about 65 inches above the finish floor

and higher than the maximum allowed reach height of 48 inches above the finish floor, and

outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010;

ADAAG § 603.4.   (iii) Due to its height above the floor, the Plaintiff tried but could not use this

coat hook.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

### THE PASTA HOUSE WOMEN'S RESTROOM

jj.  (i) The women's restroom in The Pasta House Co. does not have signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, the women's restroom in The Pasta House Co. does not have signage with the International Symbol of Accessibility, in violation of the Federal Law 2010; ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and such lack of signage is a barrier to access in that it appeared to the Plaintiff that The Pasta House Co. does not have an accessible restroom.   This lack of signage deters the Plaintiff from eating at The Pasta House Co.  (iv) The action required to install a sign with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



kk.   (i) In the women's restroom in The Pasta House Co., there is no door pull on either side of the accessible toilet compartment door.   (ii) A door pull is not provided on either side of this accessible toilet compartment door, in violation of Federal Law 2010; ADAAG § 604.8.1.2. (iii) Due to the lack of a door pull on either side of this toilet compartment door, the Plaintiff had difficulty opening the door and he could not fully close this door when he used the toilet.   (iv) The action required to install a door pull on both sides of this toilet compartment door is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the women's restroom in The Pasta House Co., the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar is less than 36 inches long and is only about 24

inches long, in violation of Federal Law 2010: ADAAG § 604.5.2.   (iii) Due to this short rear

wall grab bar, the Plaintiff had difficulty using it to position himself to use the toilet.   (iv) The

action required to replace this rear wall grab bar is easily accomplishable and able to be carried

out without much difficulty or expense.

      mm.      (i) In the women's restroom in The Pasta House, the side wall grab bar is less

than 42 inches long.   (ii) This side wall grab bar is less than the minimum required length of 42

inches and is only about 37 inches long, in violation of Federal law 2010; ADAAG § 604.5.1.

(iii) Due to this short side wall grab bar, the Plaintiff had difficulty using it to transfer himself

from his wheelchair to the toilet and back again.   (iv) The action required to replace this side

wall grab bar is easily accomplishable and able to be carried out without much difficulty or

expense.

      nn.      (i) In the women's restroom in The Pasta House Co., the side wall grab bar extends

less than 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum

of 54 inches from the rear wall, in violation of Federal Law 2010; ADAAAG § 604.5.1.   (iii)

Due to the lack of adequate extension of this side wall grab bar from the rear wall, the Plaintiff

had more difficulty using it to transfer himself from his wheelchair to the toilet and back again.

(iv) The action required to replace and properly position this side wall grab bar is easily

accomplishable and able to be carried out without much difficulty or expense.

      oo.      (i) In the women's restroom in The Pasta House Co., the toilet paper dispenser is not

located between 7 and 9 inches from the front of the toilet.   (ii) This toilet paper dispenser is

located behind the toilet, as shown in the photograph below, and is not located between 7 and 9

inches from the front of the toilet, in violation of Federal Law 2010: ADAAG § 604.7.   (iii) Due

to the location of this toilet paper dispenser, the Plaintiff tried but could not reach toilet paper

from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



pp.      (i) In the women's restroom in The Pasta House Company, the space between the top of the rear wall grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches.   (ii) The space between the top of this rear wall grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches and is only about 7 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to this lack of space between this bar and dispenser, the Plaintiff had increased difficulty using the rear wall grab bar to position himself to use the toilet. (iv) The action required to relocate this toilet cover dispenser is easily accomplishable and able

to be carried out without much difficulty or expense.

qq.     (i) In the women's restroom in The Pasta House Co., the light switch is higher than 48 inches above the floor.   (ii) The light switch in this restroom is higher than 48 inches above the finish floor and is about 54 inches above the finish floor, and it is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.1.   (iii) Due to the height of this light switch above the floor, the Plaintiff could not operate it from his wheelchair.   (iv) The action required to relocate this light switch is easily accomplishable and able to be carried out without much difficulty or expense.

51.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

52.     The discriminatory violations described in paragraph 61 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

53.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and their facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

54.     Defendants have discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

55.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

56.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.  Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

57.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

58.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR

36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

59.      Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

60.      Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter Creve Coeur Plaza, and adjacent parking lot spaces, access aisles, and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*